## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **MULTI-COLOR CORPORATION**<br>4053 Clough Woods Dr.<br>Batavia, Ohio 45103 | : <br> : | **Case No. _____**<br><br>**Judge _____** |
| **Plaintiff,** | : | |
| **vs.** | : | |
| **MARK GIULIANI**<br>N7483 Wood Drive<br>Trego, Wisconsin 54888 | :<br>:<br>: | **COMPLAINT**<br><br>**(With Jury Demand Endorsed Hereon)** |
| | : | |
| **Defendant.** | : | |
| | : | |

Plaintiff Multi-Color Corporation ("MCC"), for its Complaint for Preliminary and Permanent Injunctive Relief and Damages against Defendant Mark Giuliani ("Giuliani") alleges as follows:

### I.      PARTIES, JURISDICTION, AND VENUE

1.      MCC is an Ohio corporation with its principal place of business at 4053 Clough Woods Dr., Batavia, Ohio.  MCC develops, manufactures and sells custom labeling solutions.

2.      Giuliani is a former MCC employee, residing at N7483 Wood Drive, Trego, Wisconsin 54888.

3.      Subject matter jurisdiction is proper in this Court based upon 18 U.S.C. §1836, *et seq.*, and 28 U.S.C. § 1367.

4.      Personal jurisdiction and venue are proper over Giuliani because he was employed by an Ohio company, performed services for MCC in Ohio, and because he caused

- 1 -

a tortious injury to MCC in Ohio through his actions of misappropriating and/or inevitably utilizing confidential and trade secret information belonging to MCC.

## II.  BACKGROUND

5.  MCC is a global leader in the manufacture and development of premium labeling solutions.  It started in 1916 as the Franklin Development Company.  Today, it has facilities across North and South America, as well as in Europe, Africa, Asia and Australia.

6.  MCC partners with customers in a wide variety of industries, including Automotive, Beverage, Durables and Technical, Food and Dairy, Healthcare, Home Care and Laundry, Personal Care and Beauty, and Wine and Spirits.  It creates and develops labeling solutions for some of the world's most iconic brands in those industries, such as Dawn, Dove, Filippo Berio, and Bush's Baked Beans.

7.  Customers look to MCC to partner with them on labeling solutions from design to application.  It offers those customers a wide variety of labeling solutions based upon the product needs, including stretch sleeve, pressure sensitive, heat transfer, folding carton, roll fed, digital braille and photoluminescent signs.  The company has invested decades of time, and millions of dollars, developing manufacturing methods, print technologies, specialized inks and other innovations designed to maximize brand enhancement.

8.  Giuliani was hired by MCC in 2017 as an Account Manager.  He was responsible for the pressure sensitive product line, and worked with MCC customers across the country and internationally.  He was charged with making sales, negotiating pricing and terms, managing customer relationships, and building business with his accounts.  In order to facilitate his success, MCC shared a wide variety of confidential, proprietary and trade

secret information with Giuliani, including product development information, manufacturing methods, technologies, pricing and margin information, customer preferences, competitive strategies, and a wide variety of other sensitive information ("Confidential and Trade Secret Information").

9.      Giuliani was compensated handsomely for his role, earning more than $140,000 in salary and commission in 2023.

10.      Given the wealth of sensitive information entrusted to him, and the key role that he served with customers, Giuliani was required to enter into the At-Will Employment, Confidential Information, Restrictive Covenant, and Non-Disclosure Agreement ("Agreement") attached Exhibit A.  That Agreement contains critical provisions governing his post-employment activities.  First, Giuliani agreed to maintain the confidentiality of MCC's information:

> *Nonuse and Nondisclosure.*  I agree that during and after my employment with the Company, I will hold in strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information, and I will not use the Company Confidential Information for any purpose whatsoever other than for the benefit of the Company in the course of my employment, or disclose the Company Confidential Information to any third party without the prior written authorization of the CEO of the Company.

Exhibit A, Para. 2B.

11.      Giuliani is also prohibited from engaging in certain competitive activity for a period of one year following the termination of his employment for any reason:

> *Non-Competition.*  I agree that during the term of my employment with the Company and for a period of one (1) year immediately following the termination of my employment with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I shall not perform services for another entity engaging in the Business, whether as an officer, director, employee, contractor, or consultant, that are the same or substantially similar to the services I provided to the Company at any time

during the last one (1) year before the termination of my employment with the Company.

Exhibit A, Para. 8B.

12.     Finally, Giuliani is expressly prohibited from soliciting MCC's customers or clients during that one-year period:

> *Non-Solicitation of Customers.* I agree that for a period of one (1) year immediately following the termination of my employment with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I shall not solicit, or cause to be solicited any Customer for the purposes of conducting business that is competitive with or similar to the Business or for the purpose of disadvantaging the Company's business in any way.

Exhibit A, Para. 8A.

13.     On January 16, 2024, Giuliani submitted a two-week notice of his resignation from MCC. MCC subsequently learned that he intended to take a sales position with Inovar, in direct violation of his contractual obligations. Accordingly, MCC terminated his employment on January 22, 2024.

14.     In the exit interview with Giuliani, MCC expressly reminded Giuliani of his Agreement, and the obligations contained in it, and advised him that he was not permitted to take a similar position at a direct competitor. Giuliani acknowledged that he intended to go to work for Inovar, a direct competitor of MCC that also provides labeling solutions on a global basis. Giuliani also admitted that he had shared his Agreement with Inovar.

15.     During the exit interview on January 22, 2024, MCC also informed Giuliani that he was required to return his company-issued laptop and all MCC property via federal express, and was provided with the packaging to do so. Although Giuliani indicated that he would return the laptop and property immediately, he, in fact, did not return the laptop for 14 days.

- 4 -

16.    Following Giuliani's departure, MCC's IT personnel reviewed Giuliani's activity prior to his termination and discovered that on January 15, 2024, the eve of submitting his resignation, Giuliani downloaded MCC confidential, proprietary, and trade secret information onto an external storage device. He has not returned that external storage device. The information Giuliani downloaded consists of MCC's confidential, proprietary, and trade secret information for more than a dozen customers, including detailed pricing lists, customer lists, produce specifications, and order histories.

17.    Additionally, once MCC finally received Giuliani's laptop on February 5, 2023, it immediately sent it to be forensically imaged by PM Investigations. The forensic image process revealed that, in a blatant attempt to cover his tracks, Giuliani had intentionally installed BitLocker onto his MCC-issued laptop prior to returning it to MCC. Once MCC provided administrative credentials to override the BitLocker encryption PM Investigations confirmed that on January 15, 2024, Giuliani used a Seagate large capacity storage device to download MCC's proprietary, confidential and trade secret information.

18.    Giuliani returned a signed a Certification Regarding Return of Confidential Information to MCC on February 7, 2024, attesting that he had returned all company property and information. However, and as stated above, the forensic review of Giuliani's laptop confirms that Giuliani's Certification is a falsehood. Giuliani has failed to return MCC's confidential, proprietary, and confidential information, and the lengths he went to hide his nefarious conduct suggests that he has purposefully and willfully maintained possession of this information in order to gain an advantage in competing with MCC.

19.    Following his termination, counsel for MCC sent a cease-and-desist letter to Giuliani and Inovar. The letter demanded that Inovar stop its plans to hire Giuliani, or

terminate his employment if Giuliani had already begun work. The letter required a response by January 26, 2024.

20.     Giuliani has ignored that correspondence.

21.     Absent immediate relief from this Court, MCC will suffer irreparable harm as a result of Giuliani's conduct.

## COUNT I

### Misappropriation of Trade Secrets in
### Violation of Ohio Rev. Code § 1333.61 *et seq*. – Injunctive Relief

22.     MCC incorporates by reference its allegations contained in paragraphs 1 through 21 above as if fully rewritten herein.

23.     In connection with the development of its business over many years, MCC has expended substantial time, labor and money to research proprietary business methods, strategies, technologies, processes, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, designs and drawings, pricing methods, margins and information, sales, sales volumes and strategies, suppliers, and other confidential and proprietary information, which are subject to protection under the OhioTrade Secrets Act, Ohio Rev. Code § 1333.61 *et seq*.

24.     This information is not readily available to the public and derives independent economic value by not being accessible, through proper means, to competitors such as Inovar, who can profit from its use or disclosure.

25.     MCC has at all times taken substantial measures and exercised due diligence to maintain the secrecy of this information, including, among other things, requiring passwords to access computer systems and databases, restricting access to secured shared files, and requiring employees, such as Giuliani, who are provided access to confidential and

proprietary information, to sign written agreements that contain non-disclosure, return of information, non-solicitation, and non-competition obligations.

26. Giuliani was provided access to Confidential and Trade Secret Information in his roles at MCC including, but not limited to, information regarding proprietary business methods, strategies, technologies, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, pricing methods, margins and information, bids, sales, products, sales volumes and strategies, purchasing histories, and other Confidential and Trade Secret Information, which has allowed MCC to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its Confidential and Trade Secret Information.

27. On the night before submitting his resignation, Giuliani used his laptop to download MCC's Confidential and Trade Secret Information onto an external storage device. Giuliani has failed to return the external storage device, and has falsely certified that he has returned all MCC property and information.

28. Giuliani also installed BitLocker encryption onto his MCC laptop prior to returning it to MCC in an attempt to cover his tracks. This egregious conduct evidences Giuliani's intention of retaining possession of and using MCC's Confidential and Trade Secret Information.

29. Giuliani has used, or inevitably will use, MCC's Confidential and Trade Secret Information in performing his duties for Inovar and competing unfairly with MCC.

30. Giuliani has misappropriated and used, or inevitably will use MCC's Confidential and Trade Secret Information knowingly, willfully, maliciously, intentionally, and in bad faith.

31.     The misappropriation of MCC's Confidential and Trade Secret Information has and will proximately cause substantial damage to MCC including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, and if transferred to Inovar or any other competitor, potential lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

32.     Unless Giuliani is preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating MCC's Confidential and Trade Secret Information, MCC will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

33.     MCC is entitled to preliminary and permanent injunctions against the continued misappropriation of its Confidential and Trade Secret Information, and the use, possession, transfer, duplication, and disclosure to or by Inovar of such Confidential and Trade Secret Information, and against any future development or activities that would or could make use of such Confidential and Trade Secret Information.

34.     Unless Giuliani is enjoined from using and disclosing MCC's Confidential and Trade Secret Information, and from unfairly competing against it, MCC will be irreparably harmed by:

(a)  The loss of its goodwill;

(b)  Damage to its organizational stability;

(c)  Use and disclosure by Giuliani of MCC's valuable Confidential and Trade Secret Information, which is solely the property of MCC;

(d)  The loss of confidence and trust of customers, loss of good will, and loss of business reputation; and

(e)  Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

35.     MCC has no adequate remedy at law.

### COUNT II

**Misappropriation of Trade Secrets – Damages
under Ohio Rev. Code § 1333.61 *et seq*.**

36.     MCC incorporates paragraphs 1 through 35 above by reference as if fully rewritten herein.

37.     In connection with the development of its business over many years, MCC has expended substantial time, labor and money to research proprietary business methods, strategies, technologies, processes, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, designs and drawings, pricing methods, margins and information, sales, sales volumes and strategies, suppliers, and other confidential and proprietary information which is subject to protection under the Ohio Trade Secrets Act § 1333.61 *et seq*.

38.     This information is not readily available to the public and derives independent economic value by not being accessible, through proper means, to competitors such as Inovar, who can profit from its use or disclosure.

39.     MCC has at all times taken substantial measures and exercised due diligence to maintain the secrecy of this information, including, among other things, requiring passwords to access computer systems and databases, restricting access to secured shared files, and requiring employees, such as Giuliani, who are provided access to confidential and proprietary information, to sign written agreements that contain non-disclosure, return of information, non-solicitation, and non-competition obligations.

40.     Giuliani was provided access to Confidential and Trade Secret Information in his roles at MCC including, but not limited to, information regarding proprietary business

methods, strategies, technologies, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, pricing methods, margins and information, bids, sales, products, sales volumes and strategies, purchasing histories, and other Confidential and Trade Secret Information, which has allowed MCC to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its Confidential and Trade Secret Information.

41.     On the night before submitting his resignation, Giuliani used his laptop to download MCC's Confidential and Trade Secret Information onto an external storage device. Giuliani has failed to return the external storage device, and has falsely certified that he has returned all MCC property and information.

42.     Giuliani also installed BitLocker encryption onto his MCC laptop prior to returning it to MCC in an attempt to cover his tracks. This egregious conduct evidences Giuliani's intention of retaining possession of and using MCC's Confidential and Trade Secret Information.

43.     Giuliani has used, or inevitably will use, MCC's Confidential and Trade Secret Information in performing his duties for Inovar and competing unfairly with MCC.

44.     Giuliani's misappropriation of MCC's Confidential and Trade Secret Information has and will proximately cause substantial damage to MCC including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, and if transferred to Inovar or any other competitor, potential lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

45.     As a direct and proximate result of Giuliani's unlawful conduct, he is liable to MCC in an amount in excess of $75,000, the precise amount to be determined at trial.

46.     Giuliani has misappropriated and used, or inevitably will use MCC's Confidential and Trade Secret Information knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

### COUNT III

**Misappropriation of Trade Secrets – Injunctive
Relief under 18 U.S.C. § 1836, *et seq.***

47.     MCC incorporates paragraphs 1 through 46 above by reference as if fully rewritten herein.

48.     Pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, this Court may act in equity to enjoin threatened misappropriations of Trade Secrets.

49.      In connection with the development of its business over many years, MCC has expended substantial time, labor, and money to research proprietary business methods, strategies, technologies, processes, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, designs and drawings, pricing methods, margins and information, sales, sales volumes and strategies, suppliers, and other Confidential and Trade Secret Information which is subject to protection under 18 U.S.C. § 1836, *et seq.*

50.     This Information is not readily available to the public and derives independent economic value by not being accessible, through proper means, to competitors such as Inovar, who can profit from its use or disclosure.

51.     MCC has at all time taken substantial measures and exercised due diligence to maintain the secrecy of this Information, including, among other things, requiring passwords to access computer systems and databases, restricting access to secured shared

files, and requiring employees, such as Giuliani, who are provided access to confidential and proprietary information, to sign written agreements that contain non-disclosure, return of information, non-solicitation, and non-competition obligations.

52.     Giuliani was provided access to Confidential and Trade Secret Information in the performance of his roles at MCC including, but not limited to, information regarding proprietary business methods, strategies, technologies, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, pricing methods, margins and information, bids, sales, sales volumes and strategies, purchasing histories, and other Confidential and Trade Secret Information, which has allowed MCC to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its Confidential and Trade Secret Information.

53.     Upon information and belief, before leaving his employment with MCC, Giuliani used his laptop to download MCC's Confidential and Trade Secret Information onto an external storage device. Giuliani has failed to return the external storage device, and has failed to certify that he has returned all MCC property and information.

54.     Giuliani has used, or inevitably will use, MCC's Confidential and Trade Secret Information in performing his duties for Inovar and competing unfairly with MCC.

55.     Giuliani has misappropriated and used, or inevitably will use MCC's Confidential and Trade Secret Information knowingly, willfully, maliciously, intentionally, and in bad faith.

56.     The misappropriation of trade secrets has and will proximately cause substantial damage to MCC including, but not limited to, loss of goodwill, unjust enrichment,

or a reasonable royalty, and if transferred to Inovar or any other competitor, potential lost profits, potential lost revenue and future loss of the same amount to be determined at trial.

57. Unless Giuliani is preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating MCC's Confidential and Trade Secret Information, MCC will suffer immediate and irreparable injury, loss or damage for which there is no adequate remedy at law.

58. MCC is entitled to preliminary and permanent injunction against the use, possession, transfer, duplication and disclosure by Giuliani of such Confidential and Trade Secret Information, and against any future development or activities that would or could make use of such Confidential and Trade Secret Information.

59. Unless Giuliani is enjoined from using and disclosing MCC's Confidential and Trade Secret, and from unfairly competing against it, MCC will be irreparably harmed by:

> (a) The loss of its goodwill;
>
> (b) Damage to its organizational stability;
>
> (c) Use and disclosure by Giuliani of MCC's valuable Confidential and Trade Secret Information which is solely the property of MCC;
>
> (d) The loss of confidence and trust of customers, loss of good will, and loss of business reputation; and
>
> (e) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

60. MCC has no adequate remedy at law.

## COUNT IV

**Misappropriation of Trade Secrets – Damages**
**under 18 U.S.C. §1836, *et seq.***

61.     MCC incorporates paragraphs 1 through 60 above by reference as if fully rewritten herein.

62.     Giuliani has violated 18 U.S.C. §1836 *et seq.* by misappropriating confidential, proprietary and trade secret information belonging to MCC.

63.     In connection with the development of its business over many years, MCC has expended substantial time, labor and money to research proprietary business methods, strategies, technologies, processes, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, designs and drawings, pricing methods, margins and information, sales, sales volumes and strategies, suppliers, and other confidential and proprietary information which is subject to protection under 18 U.S.C. § 1836, *et seq.*

64.     This information is not readily available to the public and derives independent economic value by not being accessible, through proper means, to competitors such as Inovar, who can profit from its use or disclosure.

65.     MCC has at all times taken substantial measures and exercised due diligence to maintain the secrecy of this information, including, among other things, requiring passwords to access computer systems and databases, restricting access to secured shared files, and requiring employees, such as Giuliani, who are provided access to confidential and proprietary information, to sign written agreements that contain non-disclosure, return of information, non-solicitation, and non-competition obligations.

66.     Giuliani was provided access to Confidential and Trade Secret Information in his roles at MCC including, but not limited to, information regarding proprietary business methods, strategies, technologies, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, pricing methods, margins and information, bids, sales, products, sales volumes and strategies, purchasing histories, and other Confidential and Trade Secret Information, which has allowed MCC to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its Confidential and Trade Secret Information.

67.     On the night before submitting his resignation, Giuliani used his laptop to download MCC's Confidential and Trade Secret Information onto an external storage device. Giuliani has failed to return the external storage device, and has falsely certified that he has returned all MCC property and information.

68.     Giuliani also installed BitLocker encryption onto his MCC laptop prior to returning it to MCC in an attempt to cover his tracks. This egregious conduct evidences Giuliani's intention of retaining possession of and using MCC's Confidential and Trade Secret Information.

69.     Giuliani has used, or inevitably will use, MCC's Confidential and Trade Secret Information in performing his duties for Inovar and competing unfairly with MCC.

70.     The misappropriation of MCC's Confidential and Trade Secret Information has and will proximately cause substantial damage to MCC including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, and if transferred to Inovar or any other competitor, potential lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

71.     As a direct and proximate result of Giuliani's unlawful conduct, he is liable to MCC in an amount in excess of $75,000, the precise amount to be determined at trial.

72.     Giuliani has misappropriated and used, or inevitably will use MCC's Confidential and Trade Secret Information knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

## COUNT V

### Breach of Contract – Injunctive Relief

73.     MCC incorporates paragraphs 1 through 72 above by reference as if fully rewritten.

74.     The non-compete, non-solicitation and non-disclosure provisions contained in the Agreement described above are reasonable and necessary to protect MCC's legitimate business interests including, but not limited to, its current and prospective customer relationships, its employment relationships, its technology, its good will and its confidential, proprietary and/or trade secret information.

75.     Giuliani breached the non-compete, non-solicitation and non-disclosure provisions contained in the Agreement by becoming employed by Inovar, and by stealing, retaining, utilizing, and/or inevitably disclosing MCC's trade secret information.

76.     Unless Giuliani is enjoined from further violating the provisions of the Agreement, MCC will be irreparably harmed by:

    (a)  The loss of its goodwill;

    (b)  Damage to its organizational stability;

    (c)  Use and disclosure by Giuliani of MCC's valuable confidential and trade secret information which is solely the property of MCC;

- 16 -

(d)  The loss of confidence and trust of customers, loss of good will, and loss of business reputation; and

(e)  Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

77.     MCC has no adequate remedy at law.

## COUNT VI

### Breach of Contract - Damages

78.     MCC incorporates paragraphs 1 through 77 above by reference as if fully rewritten herein.

79.     Giuliani has violated and is continuing to violate the non-compete, non-solicitation and non-disclosure provisions of the Agreement as described above.

80.     As a direct and proximate result of Giuliani's unlawful conduct, he is liable to MCC in an amount in excess of $75,000.00, the precise amount to be determined at trial.

## COUNT VII

### Conversion – Injunctive Relief

81.     MCC incorporates paragraphs 1 through 80 above by reference as if fully rewritten herein.

82.     Giuliani has exercised dominion and control over MCC's property.

83.     MCC has ownership and the right to possession of its property that Giuliani converted.

84.     This property belongs to MCC and Giuliani has no lawful right to retain it.

85.     Unless Giuliani is ordered to return the MCC Confidential and Trade Secret Information in his possession, MCC will be irreparably harmed by:

(a)  The loss of its goodwill;

(b)  Damage to its organizational stability;

(c) Use and disclosure by Giuliani of MCC's valuable confidential and trade secret information which is solely the property of MCC;

(d) The loss of confidence and trust of customers, loss of good will, and loss of business reputation; and

(e) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

86. MCC has no adequate remedy at law.

## COUNT VIII

### Conversion – Damages

87. MCC incorporates paragraphs 1 through 86 above by reference as if fully rewritten herein.

88. Giuliani has exercised dominion and control over MCC's property.

89. MCC has ownership and the right to possession of its property that Giuliani converted.

90. This property belongs to MCC and Giuliani has no lawful right to retain it.

91. Giuliani's actions were intentional, malicious, reckless, fraudulent, and/or grossly negligent, and as a result, MCC is entitled to punitive damages in addition to all attorneys' fees and costs that it incurs as part of this lawsuit, as well as prejudgment and post-judgment interest.

## COUNT IX

### Breach of Fiduciary Duty

92. MCC incorporates paragraphs 1 through 91 above by reference as if fully rewritten herein.

93. As an Account Manager with MCC, Giuliani occupied an important position of trust and confidence.

94.     MCC trusted Giuliani with its Confidential and Trade Secret Information, including information regarding proprietary business methods, strategies, technologies, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, pricing methods, margins and information, bids, sales, products, sales volumes and strategies, and purchasing histories—all of which are not generally known to the public and derive independent economic value by not being accessible, through proper means, to competitors such as Inovar, who can profit from its use or disclosure.

95.     Giuliani owed a fiduciary duty of loyalty to MCC by virtue of his sales management position, his job duties and responsibilities, and his access to MCC's Confidential and Trade Secret Information.

96.     Giuliani breached this duty of loyalty when he downloaded MCC's confidential, proprietary, and trade secret information onto an external drive just before leaving his employment with MCC to go work for a competitor, Inovar, subsequently failed to return the external drive to MCC, and installed BitLocker onto his MCC-issued laptop prior to returning it to MCC in an attempt to cover his tracks.

97.     MCC has suffered and will continue to suffer damages as a result of these actions in an amount to be proven at trial.

98.     Moreover, MCC has been irreparably harmed, and will continue to be irreparably harmed, absent temporary and permanent injunctive relief.

**WHEREFORE**, MCC respectfully requests that this Court:

A.     With Respect to Counts I, III, V, VII, and IX:

i.     Enter a Preliminary Injunction enjoining and restraining Giuliani, as well as all persons acting in concert with him, from directly or indirectly using,

disclosing, copying, or transmitting MCC's confide ntial or trade secret information for any purpose (including, without limitation, engaging in competition with MCC or soliciting MCC's customers, vendors, consultants, or employees);

     ii.     Enter a Preliminary Injunction requiring Giuliani to abide by the terms of the signed Agreement described above and immediately enjoining and restraining Giuliani, and all persons acting in concert with him, from directly or indirectly engaging in competition with MCC, including, but not limited to, enjoining Giuliani from continuing to provide any services to Inovar and from doing business with or soliciting any current or former MCC customers, vendors, or employees;

     iii.     Require Giuliani, as well as all persons acting in concert with him, to return to MCC within twenty-four (24) hours of the Court's Order all originals, copies, or other reproductions in any form whatsoever, of any record or document containing, in whole or in part, any confidential information belonging to MCC; and

     iv.     Require that Giuliani preserve, not tamper with or modify in any way, the hard drive(s) of his  personal computer(s) or any other computer(s) he has used in the last year, and produce the hard drive(s) of his personal computer(s) or any other computer(s) he has used in the last year, and produce all USB devices and thumb drives used at any time in connection with his work at MCC within twenty-four (24) hours of the Court's  Order;

B.     With respect to Counts II, IV, VI, VIII, and IX, award MCC actual damages incurred as a result of Giuliani's breaches of the Agreement;

C.      With respect to Counts I, II, III, and IV, award MCC actual damages incurred as a result of Giuliani's misappropriation of MCC's trade secrets, as well as punitive damages;

D.      With respect to all Counts, award MCC all costs and expenses associated with this action, including its reasonable attorneys' fees, as well as pre- and post-judgment interest; and

F.      Grant MCC such other and further relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury with the maximum number of jurors permitted by law on all claims so triable.

Respectfully submitted,

 /s/  Deborah S. Brenneman
Deborah S. Brenneman (0062113)
THOMPSON HINE LLP
10050 Innovation Drive, Suite 400
Dayton, Ohio  45342
Phone:  (513) 352-6638; Fax:  (937) 443-6635
Debbie.Brenneman@ThompsonHine.com

Brittany A. Mallow (0100928)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Phone:  (216) 566-5654; Fax:  (216) 566-5800
Brittany.Mallow@ThompsonHine.com

*Attorneys for Plaintiff*
*Multi-Color Corporation*